ELEANOR KNOX *vs.* CIVIL SERVICE COMMISSION & others.[1] No. 03-P-1205. April 7, 2005. *Civil Service,* Decision of Civil Service Commission, Termination of employment. *Jurisdiction,* Civil Service Commission. *Contract,* Performance and breach. *Civil Rights,* Availability of remedy.

The plaintiff, Eleanor Knox, was terminated from her position as area program manager in the Department of Social Services (department) on October 18, 1994. Her appeal to the Civil Service Commission (commission) was dismissed for want of jurisdiction in 1997. Knox then appealed to the Superior Court contesting the commission's decision on jurisdiction and adding two other claims: that the discharge violated 42 U.S.C. § 1983 (2000), and that it constituted a violation by the department of its "performance appraisal process" and thus was a breach of contract.

The case was bifurcated. One judge, addressing the commission's decision, affirmed its ruling of want of jurisdiction; the other ruled against Knox on the breach of contract and § 1983 claims. Both judges were, in our view, correct.

1. *Civil Service Commission jurisdiction.* Despite having served for nine

---

[1]Department of Social Services, Linda K. Carlisle, and Joseph J. Madigan.

years, roughly, in the department, Knox never achieved tenured status under the civil service law. She was originally appointed as a provisional civil service employee to a social worker IV vacancy. She worked as the area program manager for the Chelsea area office and was assigned to job group M-IV, the "M" signifying the management pay scale for compensation purposes. In her sixth year, 1989, she was transferred to the tri-city area office in Malden, was reduced to half-time, and worked as the area program manager, still in the M-IV job group, and still holding provisional status.[2] Effective June 27, 1993, the Department of Personnel Administration (DPA) reclassified all area program manager positions to the M-V job group, a classification that is outside the protection of the civil service system, see G. L. c. 30, § 46E. In the spring of 1994, Knox received a performance evaluation that deprived her of a merit pay increase.[3] She received no further formal evaluation before her discharge in October, 1994, which was effected on the basis of deficient performance.

Recognizing now that she cannot appeal her discharge to the commission as a tenured employee might under G. L. c. 31, § 41,[4] Knox relies instead on c. 31, § 2(b), which gives the commission jurisdiction to hear appeals by "a person aggrieved" for a "failure to act" by the DPA. See G. L. c. 31, § 2(b), as appearing in St. 1981, c. 767, § 11. The failure to act in Knox's case was an alleged refusal by the DPA to entertain an appeal by Knox from her discharge.[5] Section 2(b), however, specifies that "[n]o person shall be deemed to be aggrieved . . . unless such person [alleges] . . . that a . . . failure to act on the part of the administrator [of the DPA] was in violation of [c. 31 and]

---

[2]In 1985, Knox had applied for and was scheduled to take the civil service examination for permanent appointment to a social worker IV position, but the Department of Personnel Administration (DPA) canceled the examination because social worker IV was not a position in the authorized staffing of the department, and because "this title has been reclassified in the managerial plan as a Program Manager IV." Later in 1985, the DPA scheduled an open and promotional examination for social worker III positions. Knox sat for the examination and received a ninety-three percent score. The DPA subsequently upgraded and reclassified the social worker III title to social worker IV. Thus, when a list was established on September 23, 1987, Knox appeared on the certification list for appointment to a temporary social worker IV position. Knox failed to sign the list certifying her willingness to accept an appointment. In 1990, Knox scored one hundred percent in an open competitive exam for social worker IV positions. DPA established an eligible list but made no appointments from the list because it had not yet exhausted a promotional list for social worker IV positions, promotions from within the service having preference over appointments from an open list. See G. L. c. 30, § 46D.

[3]The performance management system established four ratings: outstanding, meritorious, acceptable, and needs improvement. One who is rated outstanding or meritorious gets both a merit increment (step raise) and a merit increase. Knox was rated "acceptable," making her eligible for a merit increment only. She could have appealed this rating to her department head and then to the DPA, but she did not do so. One who is rated "needs improvement" is denied both the increase and the increment, and is instead made subject to a remediation program.

[4]We say "now" because Knox's notice of appeal as filed purported to be under the provision of § 41.

[5]Knox's appeal to the commission stated that she had been advised by a member of the DPA's legal staff that she should bring her appeal to the commission. No DPA paperwork evidences the alleged refusal.

the rules or basic merit principles promulgated thereunder." *Ibid.* Whatever rights Knox might have had to DPA review of her treatment by the department stem not from c. 31 — Knox had no civil service status[6] — but from G. L. c. 30, § 46C(2), (3), which directed the personnel administrator of the DPA (administrator) to administer a program whereby merit increments and merit increases are made subject to performance evaluations, and provide for appeals when merit increments and merit increases are denied.

Knox asserts another alleged failure by the administrator on which her appeal to the commission might be premised: the failure to establish a career management service program under G. L. c. 31, § 48A. The record is silent as to whether such a program was ever established and, even if it was, how it fits with the performance management system established by the administrator under c. 30, § 46C(2), (3); but it is clear from the authorizing statute that the program would lack appeal rights that could assist Knox.[7] Finally, Knox argues that the commission had jurisdiction under G. L. c. 30, § 53, which gives the administrator authority to establish an "informal procedure" for resolution of grievances "relating to classification, hours of employment, vacations, sick leave or other forms of leaves of absence, overtime, and other matters relating to conditions of employment," with an appeal from a negative decision by the appointing authority to the administrator, and thence to the commission. See G. L. c. 30, § 53, as amended through St. 1965, c. 853. But the familiar principle of ejusdem generis precludes us from holding that "conditions of employment" in that listing includes discharges from employment. See *Banushi* v. *Dorfman*, 438 Mass. 242, 244 (2002). Not only are discharges different in character from the specific items listed, but the phrase "conditions of employment" does not in ordinary usage connote actions like hirings and firings.

The judge correctly upheld the commission's ruling that it lacked jurisdiction to hear Knox's appeal.

2. *Knox's breach of contract claim.* Citing *O'Brien* v. *New England Tel. & Tel. Co.*, 422 Mass. 686, 691 (1996), Knox argues that the one hundred page performance management system guide is a personnel manual that gives rise to an enforceable employment contract, and that terminating one who has not received even one "needs improvement" rating violates an implied promise that discharges will be based on evaluations. Alternatively, she argues that if a right of appeal is extended for negative evaluations, a fortiori such a right should exist for a discharge. Neither argument is sound. In contrast to the

[6]General Laws c. 30, §§ 46E, 46F, state explicitly that persons assigned to job groups M-V through M-XII inclusive are to have no civil service status or tenure rights in their management positions. Under § 46D, one who loses her position in managerial grades may in certain circumstances be restored to a civil service position which she had occupied immediately before promotion to the management position, provided that she had achieved tenure in the civil service position. Knox, it is agreed, never achieved such tenure.

[7]Section 48A states that personnel actions in the career management services program will be based on a performance appraisal system "except for dismissal for reasons of misconduct, malfeasance, or neglect of duty" and that performance appraisals shall not be appealable. See G. L. c. 31, § 48A(12), (13), inserted by St. 1981, c. 767, § 22. There is no language in § 48A establishing a right of appeal for discharges or any other personnel action.

employee manual at issue in *O'Brien*, which created a reasonable expectation of fair treatment (*id.* at 695), the performance management system guide at most created an expectation that bad performance ratings and denials of merit increments and merit increases would be subject to a right of appeal to the DPA. The guide contains no mention of discharge at all, let alone progressive discipline, just cause, or general fair treatment. The guide must be read in conjunction with the authorizing statute, which in G. L. c. 30, § 46F, makes explicit that managers are to have no tenure rights in their positions as managers.

3. *Knox's claim under 42 U.S.C. § 1983.* For this claim to lie, Knox's discharge must have resulted in her being deprived of a property interest without due process of law. *Board of Regents* v. *Roth*, 408 U.S. 564, 576-578 (1972). A property interest in the employment context can only arise by statute or contract. See *Cleveland Bd. of Educ.* v. *Loudermill*, 470 U.S. 532, 538 (1985). Because Knox had neither statutory nor contractual rights to continued employment, she had no property interest on which to premise a § 1983 claim.

*Judgments affirmed.*

*Terence P. Noonan* for the plaintiff.

*Susan Paulson*, Assistant Attorney General, for the defendants.